**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

GLENN SMITH,

    Plaintiff,

v.                                            Case No. 8:12-CV-52-T-30AEP

KATHY CONNER, et. al.,

    Defendants.
_____/

**AMENDED ORDER[1]**

THIS CAUSE comes before the Court upon Defendants' Motion for Summary Judgment (Dkt. 99), Plaintiff's response in opposition (Dkt. 123), Plaintiff's Motion for Summary Judgment (Dkt. 124), and Defendants' response in opposition (Dkt. 126). The Court, having reviewed the motions, responses, record evidence, and being otherwise advised in the premises, concludes that Defendants' motion should be granted and summary judgment entered in Defendants' favor.

**BACKGROUND**

This is an action under 42 U.S.C. §1983 premised on Defendants' purported failure to provide Plaintiff, a prisoner incarcerated at Hardee Correctional Institution ("HCI") in Bowling Green, Florida, with adequate: 1) clothing and bedding to protect him from the

---

[1] This Order is being amended solely to correct a single erroneous factual determination. Namely, the sentence on page 13 of the original Order (Dkt. 127) reading "Plaintiff's own witness, Inmate Roberto Cepero, states that he stays sufficiently warm while sleeping in his 'class A' uniform under a single blanket (Dkt. 11 at Appx. 'C')[]" is replaced by the following sentence: "Plaintiff's own witness, Inmate Roberto Cepero, states that he stays sufficiently warm while sleeping in his 'class A' uniform under two blankets (Dkt. 11 at Appx. 'C')."

cold; 2) clothing to protect him from the rain; and 3) storage space. Plaintiff asserts that the denial of these items constitutes an Eighth Amendment violation.

Plaintiff has been incarcerated in the Florida Department of Corrections since 1992 and was sentenced to life imprisonment (Dkt. 99-1). Plaintiff has been incarcerated at HCI since August 2010 (Dkt. 99-2 at docket p.1). Inmates at HCI are issued one belt (unless issued pants are beltless type), three pairs of pants, three outer shorts, four t-shirts, up to six pairs of socks, four undershorts, and one pair of authorized footwear or one pair of work boots (if necessary) (Dkt. 99-3 at docket p. 4). Inmates are also provided two sheets, one blanket, one pillow case, one towel, one wash cloth, one mattress, one pillow, and one laundry bag or nylon washing string (Id. at docket pp. 3-4). During the winter, inmates may be issued additional clothing and bedding, to wit, up to one jacket, one extra blanket, two thermal pants, and two thermal tops (Id. at docket p. 5).[2] These additional items are generally removed from the inmates' possession by April 30 of each year (Id.).

Inmates also may purchase additional clothing items from the canteen (Id. at docket p. 6). Specifically, inmates may purchase rain ponchos, two sweatshirts, two pairs of long underwear (tops and bottoms), and pajamas (Dkt. 124, Plaintiff's Appx. A at p. 24). However, the total number of clothing items an inmate may possess, whether issued or purchased, may not exceed the totals established by Rule 33-602.201(4)(a), Fla. Admin.

---

[2]The Regional Director determines which items will be issued to the inmates (Id.).

2

Code (Dkt. 99-3 at docket p. 6).[3] Plaintiff's father has purchased "heavier clothing" for Plaintiff on multiple occasions (Dkt. 124, Plaintiff's Appx. A at p. 73; Appx. B).

At the time of his May 22, 2013 deposition, Plaintiff possessed, in addition to the standard issued clothing and bedding items, two blankets,[4] two sweatshirts, two long john tops, one pair long john bottoms, and one rain poncho (Id. at deposition pp. 33-37, 48-49). And, he had medical passes for an extra blanket (which runs through April 8, 2014), boots, and a straw hat (Id. at pp. 9-10).

The average winter temperatures (measured in fahrenheit) in Bartow, Florida, a city approximately 20 miles north of HCI, from 2010 through February 2013, were as follows:

<u>2010</u>

Oct.    Max Temp. 84°    Min. Temp. 61°

Nov.    Max Temp. 77°    Min. Temp. 55°

Dec.    Max Temp. 62°    Min. Temp. 38°

<u>2011</u>

Jan.    Max Temp. 68°    Min. Temp. 46°

Feb.    Max Temp. 75°    Min. Temp. 51°

Oct.    Max Temp. 82°    Min. Temp. 62°

Nov.    Max Temp. 78°    Min. Temp. 61°

---

[3]The rule authorizes, in pertinent part, an inmate to possess at any one time: 1 coat; 2 pairs of pajamas; 3 pants; 1 raincoat or poncho; 4 t-shirts; 1 pair of boots; 6 pairs of socks; 2 sweatshirts; and 2 thermal underwear. See Rule 33-602.201, Appendix One.

[4]During the preceding winter, Plaintiff possessed a fourth blanket and a coat (Id. at deposition p. 48).

3

Dec.   Max Temp. 75°   Min. Temp. 55°

2012

Jan.   Max Temp. 72°   Min. Temp. 47°

Feb.   Max Temp. 75°   Min. Temp. 55°

Oct.   Max Temp. 82°   Min. Temp. 65°

Nov.   Max Temp. 73°   Min. Temp. 61°

Dec.   Max Temp. 74°   Min. Temp. 52°

2013

Jan.   Max Temp. 70°   Min. Temp. 63°

Feb.   Max Temp. 76°   Min. Temp. 51°

(Dkt. 99-4).

During the winter months, inmates in open population must go to the recreation yard on weekday mornings and afternoons if the inmates are not in a program or on work assignment (Dkt. 124, Plaintiff's Appx. A at pp. 12-13). Inmates are not required to go to the yard, however, in colder temperatures, which Plaintiff believes to be anything below 40 degrees, or when "it is definitely threatening rain." (Id.; Dkt. 124, Plaintiff's Appx. I at p. 7). Even on the days when inmates are not required to go to the yard due to the cold, it is Plaintiff's "personal practice" to go outside to the yard (Dkt. 124, Plaintiff's Appx. A at p. 14). Plaintiff believes that the majority of inmates "seem to be able to tolerate the amount of time that we're outside." (Id. at p. 51).

4

Inmates must go outside, even in the coldest and wettest weather, to go to meals, job assignments, programs, chapel, the mail room, etc. (Id. at pp. 15-17). If Plaintiff is cold while standing in line to enter the cafeteria, he will march in place to get warm (Id. at pp. 54-55).

Inside the prison, Plaintiff is "generally cold" when outside temperatures drop below 40 degrees (Id.).[5] The prison cells are heated, with the thermostats set to turn the heat on when the temperature drops to 65 degrees, and go off when the temperature reaches 72 degrees (Dkt. 124, Plaintiff's Appx. I at p. 4). Plaintiff, however, believes that the heat in the "day room" of the prison is "ineffective" when the outside temperature drops below 50 degrees (Dkt. 124, Plaintiff's Appx. A at deposition p. 50). Moreover, Plaintiff has had problems at times staying warm in his cell because his cell mates complained that they were hot and therefore opened the cell's window, letting in cold air (Id. at pp. 32-33, 49).

There is no rule at HCI restricting what inmates may wear while sleeping (Id. at p. 23). On some nights, while sleeping under three or four blankets, Plaintiff wore his long-john bottoms, two pairs of long-john tops, two pairs of pants, two sweatshirts, two or three t-shirts, two or three pairs of socks, and his boots and jacket (Id. at pp. 33, 58). Despite the numerous layers of clothing and blankets, Plaintiff still woke up shivering and had to exercise in his cell to get warm (Id. at p. 33).

---

[5]There are no thermometers either inside the prison or outside (Dkt. 124, Plaintiff's Appx. A at pp. 79-80). Plaintiff estimates the temperature based on his "own feelings" and the morning news on television (Id. at p. 80).

There are no covered walkways between buildings at HCI to protect inmates from the rain (Dkt. 124, Plaintiff's Appx. G at p. 1), and, depending on how hard it is raining, inmates may get significantly wet moving between buildings (Dkt. 124, Plaintiff's Appx. A at deposition p. 61). Inmates may, however, stand and stay dry under a "portico" while waiting to enter the cafeteria (Id.). When inmates get wet, they are allowed to report to their dorms and change into dry clothing, and may hang their wet clothes to dry, as long as no rules are violated (Dkt. 124, Plaintiff's Appx. G at p. 2).

Plaintiff is currently assigned to work Inside Grounds, which means he picks up trash and sweeps sidewalks for 20 minutes to 2.5 hours a few days a week (Dkt. 124, Plaintiff's Appx. A at deposition pp. 7-8). Plaintiff is generally not required to work when it is raining (Id. at p. 59). If it begins to rain while Plaintiff is working, he is allowed to seek shelter (Id.).

Plaintiff wears his poncho if it is raining (Id. at p. 61). The poncho, however, does not prevent Plaintiff's pants (apparently below the knees), socks, and shoes from getting wet (Id. at p. 62; Dkt. 11 at docket p. 16). Also, the poncho does not prevent Plaintiff's face and glasses from getting wet (Id. at p. 68). Plaintiff's hat, however, does help keep the rain off his glasses (Id.). Plaintiff's boots are not waterproof and do not prevent his socks from getting wet from the rain and puddles that accumulate on the sidewalks (Id. at pp. 62, 68). When his boots get wet, it may take up to three days for the boots to dry (Id. at p. 69). Plaintiff believes that having wet boots and socks aggravates his "problems with fungus" on his feet (Id.).

With regard to Plaintiff's claim that Defendants do not provide him with adequate storage space, Plaintiff alleges that "clothing is subject to. . .storage limitations. . .which . . . further limits an inmate's ability to try to find accommodation to cold or wet weather." (Dkt. 11 at docket p. 18). Inmates at HCI are provided a footlocker for storage (Dkt. 124, Plaintiff's Appx. I at p. 5). The lockers in "open population" are 3.75 cubic feet, and the lockers in confinement cells are 2.7 cubic feet (Id.). Inmates are supposed to keep all of their property, including clothing, in their locker (Dkt. 124, Plaintiff's Appx. A at pp. 39-40). Plaintiff cannot close the lid on his locker because of the amount of property he possesses (Id. at p. 41). HCI has received a variance of the state fire code, allowing open footlockers (Dkt. 124, Plaintiff's Appx. I at p. 6). At times, Plaintiff hides legal work under his bed because he does not have enough room to store it in his locker (Dkt. 124, Plaintiff's Appx. A at pp. 41-42). Plaintiff and other inmates "have to decide what [they're] going to have and what [they're] not going to have in order to fit things in the locker. . . ." (Id. at p. 43).

## SUMMARY JUDGMENT STANDARD OF REVIEW

Motions for summary judgment should be granted only when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the

requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (emphasis in original). The substantive law applicable to the claimed causes of action will identify which facts are material. *Id*. Throughout this analysis, the court must examine the evidence in the light most favorable to the non-movant and draw all justifiable inferences in his (its) favor. *Id*. at 255.

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324. The evidence must be significantly probative to support the claims. *Anderson*, 477 U.S. at 248-49.

This Court may not decide a genuine factual dispute at the summary judgment stage. *Fernandez v. Bankers Nat'l Life Ins. Co.*, 906 F.2d 559, 564 (11th Cir. 1990). "[I]f factual issues are present, the Court must deny the motion and proceed to trial." *Warrior Tombigbee Transp. Co. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983). A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248; *Hoffman v. Allied Corp.*, 912 F.2d 1379 (11th Cir. 1990). However, there must exist a conflict in substantial evidence to pose a jury question. *Verbraeken v. Westinghouse Elec. Corp.*, 881 F.2d 1041, 1045 (11th Cir. 1989).

## DISCUSSION[6]

Plaintiff essentially alleges three Eighth Amendment claims against Defendants: 1) Defendants do not provide adequate clothing and bedding to protect Plaintiff from the cold; 2) Defendants do not provide Plaintiff with adequate clothing to prevent him from getting wet in rain and puddles that accumulate when it rains; and 3) Defendants do not provide him with adequate space to store all of his property. Thus, Plaintiff challenges the conditions of his confinement.

The Eighth Amendment prohibits infliction of cruel and unusual punishment, thus mandating prison officials to provide humane conditions of confinement. The Constitution, however, "does not mandate comfortable prisons," *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981), and prison officials must merely ensure that inmates receive adequate food, clothing, shelter, and medical care, plus must "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)). "[A] prisoner's mere

---

[6]Defendants initially argue that this action should be dismissed because Plaintiff failed to properly exhaust his administrative remedies (Dkt. 99 at pp. 7-10). Defendants do not argue that Plaintiff failed to exhaust the Florida Department of Corrections three-step grievance procedure. See Florida Administrative Code Chapter 33-103. Rather, Defendants argue that Plaintiff did not exhaust all administrative remedies available to him because he failed to file a petition to initiate rulemaking pursuant to Florida Statutes, Section 120.54(7) prior to filing his complaint in this action. Specifically, Defendants argue that because Plaintiff seeks to amend Florida Administrative Code Chapter 33-602.201, which regulates inmate property, he was required to not only exhaust the prison grievance procedure, but also file a petition to initiate rulemaking under 120.54(7).

The Court agrees, in part, with Defendants' failure to exhaust argument. To the extent Plaintiff requests the Court order Defendants to make "the necessary additions to the inmate property list to allow necessary items[,]" the Court agrees that Plaintiff is attempting to alter a Department rule, specifically Rule 33-602.201, and therefore was required to initiate rulemaking under 120.54(7). To the extent, however, Plaintiff claims that Defendants have failed to provide him with adequate protection from the cold and wet weather, and adequate storage space, the Court finds that Plaintiff has fully exhausted his available administrative remedies through the prison grievance procedure.

discomfort, without more, does not offend the Eighth Amendment." *Chandler v. Crosby*, 379 F.3d 1278, 1295 (11th Cir. Fla. 2004) (citation omitted). Rather, a prison official may be liable for unconstitutional conditions of confinement only if he acted with deliberate indifference to a substantial risk of serious harm. *See Chandler*, 379 F.3d at 1289-90.

To establish deliberate indifference, plaintiffs must meet a two-part test. First, the alleged constitutional deprivation must be, objectively, "sufficiently serious," that is, the official's act or omission must result in the denial of "the minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at 834. These are "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348. Moreover, the challenged condition must be "extreme." *Chandler*, 379 F.3d at 1289 (citation omitted).

Second, the prison official must have a "sufficiently culpable state of mind," i.e., he must act with deliberate indifference to inmate health or safety. *Farmer*, 511 U.S. at 834. A prison official is deliberately indifferent when he is subjectively aware of the risk of serious harm, and nevertheless fails to respond reasonably to the risk. *Id.* at 837.

Plaintiff has failed to demonstrate an objective substantial risk of serious harm. "Prisoners have a right to protection from extreme cold." *Palmer v. Johnson*, 193 F.3d 346, 353 (5th Cir. 1999) (internal quotation marks and citation omitted). Nevertheless, while Plaintiff may be uncomfortably cold, inside and outside the prison, during the winter months at HCI, the cold to which he is exposed is not "extreme." The historical weather data for the area where HCI is located shows that the winter temperatures from 2010

through 2013 were, at worst, moderately severe on occasion. Moreover, Plaintiff admits that inmates are not required to go outside to the recreation yard when, Plaintiff estimates, temperatures drop to 40 degrees or lower. Although he is required to exit the prison dorms and go outside, regardless of the temperature, in order to get to the cafeteria, programs, chapel, etc., Plaintiff does not present any evidence showing that he was outside for an extended period of time in cold weather. *See, e.g., Ashann-Ra v. Virginia*, 112 F. Supp. 2d 559, 563 (W.D. Va. 2000) (complaint failed to state a claim for an Eighth Amendment violation where prisoner did "not allege that exposure of his feet to subfreezing temperatures, rain or snow during the brief walks between buildings caused severe pain, disfigurement or life-threatening risks.").

Plaintiff admits that during the winter months he possessed and could wear and layer up to three pairs of pants, four t-shirts, a jacket, two sweatshirts, two long john tops, one pair of long john bottoms, boots, and a straw hat. Additionally, Plaintiff admits that it is his "personal practice" to go outside to the yard even on the days when inmates are not required to go to the yard due to the cold, and that the majority of inmates "seem to be able to tolerate" the temperature while they are outside.

With regard to the temperatures inside the prison, Plaintiff acknowledges that the cells are heated. The evidence shows that the thermostats are set to turn the heat on when the temperature drops to 65 degrees, and go off when the temperature reaches 72 degrees. Plaintiff has failed to present any specific evidence to put this fact into dispute. Although Plaintiff asserts that the heat is "ineffective" when the outside temperature drops below

50 degrees, this general assertion is too vague and speculative to contradict Defendants' specific evidence regarding cell temperatures. *See Ojeda v. Louisville Ladder, Inc.*, 410 Fed. Appx. 213, 215 (11th Cir. 2010) (unpublished) ("[C]onclusory statements do not establish a disputed issue of material fact."); *Massachusetts School of Law at Andover, Inc. v. American Bar Ass'n*, 142 F.3d 26, 40 (1st Cir. 1998) (despite generous Rule 56 standard, court need not "swallow plaintiff's invective hook, line, and sinker; bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like need not be credited") (citation omitted); *Drake v. 3M*, 134 F.3d 878, 887 (7th Cir. 1998) ("Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter, rather it requires affidavits that cite specific concrete facts establishing the truth of the matter asserted.").

Moreover, there is no rule at HCI restricting what inmates may wear while sleeping, and Plaintiff admits that while sleeping he may wear, and has worn, long-john bottoms, two pairs of long-john tops, two pairs of pants, two sweatshirts, two or three t-shirts, multiple pairs of socks, and his boots and jacket while under three or four blankets. Therefore, even taking as true Plaintiff's assertion that the heating system at HCI is ineffective when outside temperatures fall below 50 degrees, Plaintiff has adequate alternative means to protect himself from the cold while sleeping. *See Dixon v. Godinez*, 114 F.3d 640, 644 (7th Cir. 1997) ("courts should examine several facts in assessing claims based on low cell temperature, such as the severity of the cold; its duration; *whether the prisoner has alternative means to protect himself from the cold; the adequacy*

*of such alternatives*; as well as whether he must endure other uncomfortable conditions as well as cold") (emphasis added).

In addition, Plaintiff admits that although he is often cold while sleeping in his cell, his cell mates are often too hot when the heat is running, and they open the cell window to make the cell cooler. Plaintiff's own witness, Inmate Roberto Cepero, states that he stays sufficiently warm while sleeping in his "class A" uniform under two blankets (Dkt. 11 at Appx. "C"). These facts mitigate against a finding that the temperatures inside Plaintiff's cell are objectively severe.

Plaintiff likewise fails to show that his exposure to rain and wet conditions is objectively severe, and poses a substantial risk of serious harm to him. Defendants do not issue wet weather clothing to inmates. Nevertheless, rain ponchos may be purchased at HCI's canteen. Plaintiff purchased a poncho and wears it outside when it is raining. Although Plaintiff complains that the poncho is inadequate because it does not keep his face or below his knees dry, and that as a result he may eat a meal or attend a program with soaking wet socks, feet, and pants, this claim amounts to no more than allegations of uncomfortable living conditions. Inmates are not required to go to the recreation yard or work outside if it is raining or threatening to rain, and are allowed to take shelter if it begins to rain. Also, if inmates get wet while walking to meals, programs, etc., they are allowed to report to the dorms and change into dry clothes. Therefore, Plaintiff has not proven that he has suffered any injury or been subjected to an unreasonable risk of harm as a result of being wet.

Even if Plaintiff's allegations of his exposure to cold and wet weather were enough to constitute a substantial risk of serious harm, Defendants have reasonably responded to the weather conditions at HCI. With regard to the cold weather during the winter months, inmates are issued an extra blanket and a jacket, and may receive thermal tops and bottoms depending on their work assignment. Other warm clothing items, such as sweatshirts and thermal tops and bottoms, are available for purchase at HCI's canteen. Plaintiff possesses all these items, and has a medical pass for an additional blanket, boots, and a straw hat. The inmates have multiple pairs of t-shirts, pants, and socks which they may layer to help them keep warm. Significantly, Plaintiff admits that inmates are not required to go outside on the recreation yard when the temperature reaches 40 degrees or below. Finally, the cells are heated during the winter, and the heating system is set to keep the temperature between 65 and 72 degrees.

Lastly, with regard to Plaintiff's claim of inadequate storage space, Plaintiff has failed to establish that this condition deprives him of the minimal civilized measure of life's necessities or caused him serious harm. Although he asserts that he and other inmates "have to decide what [they're] going to have and what [they're] not going to have in order to fit things in the locker[,]" this assertion fails to show that Plaintiff is being deprived of the basic necessities of life, such as adequate food, clothing, shelter, and sanitation, because of a lack of storage space. *See Hamm v. DeKalb County*, 774 F.2d 1567, 1572 (11th Cir. 1985). Although the limited storage space may be an annoyance to

Plaintiff, and he desires more space in order to possess more items, it falls far short of being a constitutional deprivation.[7]

It is therefore **ORDERED AND ADJUDGED** that:

1. Plaintiff's Motion for Summary Judgment (Dkt. 124) is **DENIED**.

2. Defendants' Motion for Summary Judgment (Dkt. 99) is **GRANTED**.

3. The Clerk of Court shall enter final judgment in favor of Defendants and against Plaintiff.

4. The Clerk shall close this case and terminate any pending motions as moot.

**DONE** and **ORDERED** in Tampa, Florida on January 28, 2014.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

SA:sfc
Copy to: *Pro se* Plaintiff
         Counsel of Record

F:\Docs\2012\12-cv-52 msj 99.wpd

---

[7]Prisoners do not enjoy a constitutional right to unlimited personal property. *See, e.g., Abbott v. McCotter*, 13 F.3d 1439, 1443 (10th Cir.1994) ("the Due Process Clause does not give prisoners a right to retain unlimited personal property. . . .")